UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

RONALD REBLIN,                                    Case No. DT 10-00282
                                                  Hon. Scott W. Dales

                    Debtor.
_____/

OPINION AND ORDER RE: SANCTIONS

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

On July 21, 2010, in Traverse City, Michigan, the court held a hearing on the Debtor's Motion for Sanctions against Kubota Credit Corporation ("Kubota") and General Motors Acceptance Corporation ("GMAC") arising from their alleged violations of the automatic stay. The court consolidated both sanctions motions for hearing at one time.

The following constitutes the court's findings of fact and conclusion of law in accordance with Rule 52. At the hearing, the court admitted the testimony of Ronald Reblin and his son, Ryan, as well as the testimony of Steve Lagerlef and Ron Gassman, as representatives of Kubota, and Rusty Reyelts, as a representative of GMAC. In addition, the court admitted documentary evidence primarily consisting of photographs of the Debtor's residence and environs.

Initially, both creditors argued that they were operating under the mistaken premise that the Debtor had not filed a Statement of Intention (the "Statement") and therefore the collateral was no longer protected by the stay pursuant to 11 U.S.C. § 362(h). Indeed, at a prior hearing in the matter, the court itself had difficulty identifying the docket entry reflecting the Statement but finally located it within the seventy-seven pages of petitions, schedules, and related statements

filed in the first docket entry.   There was, however, no separate docket entry or other individuation for the Statement.   Consequently, both creditors believed that the stay terminated as to their collateral on February 12, 2010, and that the collateral was no longer within the property of the estate.   *See* 11 U.S.C. § 362(h); *id.* § 521(a)(2) and (a)(6).   In a Pretrial Order dated April 26, 2010, after taking judicial notice of the docket entries, the court found that the stay was not terminated because the Debtor in fact filed the Statement.   (DN 53).   Clearly, the record was confusing on this point.   Indeed, Mr. Reblin's own testimony about his telephone conversations with a Kubota collection agent on March 18, 2010 may corroborate Kubota's position that it understood the automatic stay was not applicable: when Mr. Reblin asserted the protection of the automatic stay, the unidentified Kubota agent replied "I have permission to come and get this." Tr. at p. 62, line 25.

In view of the foregoing, the court now finds that the actions taken by Kubota and GMAC were in a good faith belief that the stay was terminated, and therefore, pursuant to 11 U.S.C. § 362(k)(2), the Debtor will be limited to the recovery of his actual, proven damages.

<u>The Debtor's Claims Against Kubota</u>

The Debtor alleges that Kubota repossessed a L4240 tractor (the "Tractor") from his residence on or about March 18, 2010, without first obtaining relief from the automatic stay. Kubota claims that it did not endeavor to repossess the Tractor but instead attempted to repossess an RTV off-road vehicle (the "RTV"), which was not protected by the automatic stay, having been omitted from the schedules and the Statement.   *See* 11 U.S.C. § 362(h).

Testimony at the hearing established that the Kubota repossession agent, Mr. Gassman, arrived at the Debtor's residence on Kniss Road in Kalkaska County on the morning of March

17, 2010, with instructions to repossess Kubota's collateral. The repossession agent specifically and credibly testified that Kubota directed him to repossess an RTV.[1] He had no instructions to repossess the Tractor.

Indeed, testimony from Kubota's collections manager, Mr. Lagerlef, confirmed that at no time post-petition did Kubota issue any order to repossess the Tractor. Instead, Mr. Lagerlef confirmed that Kubota directed the repossession agent to recover only the RTV. The court credits the testimony of Kubota's agents and, as a result, finds that Kubota did not violate the automatic stay by directing Mr. Gassman to recover the RTV from the Debtor's premises post-petition.

The Debtor argues, however, that the day after Mr. Gassman arrived at his home, the Tractor disappeared. More specifically, he contends that on March 18, 2010, he was attempting to affix a mower attachment to the Tractor only to discover that a shear pin was missing. As a result, the Debtor says he went into town to find a replacement shear pin, and when he returned, the Tractor and the mower were gone. He infers, and wants the court to do the same, that Kubota removed the Tractor from his premises while he was at the store because: (1) its collection agents had been telephoning him in violation of the automatic stay indicating they would not cease calling until they recovered the collateral; (2) the Tractor disappeared on March 18, 2010; and (3) the telephone calls ceased after that date.

---

[1] The Debtor contends that he sold the RTV prepetition to an undisclosed buyer. In his opinion, he had title free and clear of Kubota's security interest, because Kubota failed to note its interest on the title in accordance with Michigan's certificate of title statutes. The court does not share Mr. Reblin's view of secured transactions law, a view that confuses attachment and perfection. The loan documents establish that Kubota's security interest had attached to the Debtor's rights in the RTV, and his unauthorized disposition did not terminate Kubota's interest. MCL § 440.9315(1)(a).

As indicated previously, Kubota's agent, Mr. Lagerlef from Texas, testified that at no time did he issue any order to repossess the Tractor and no one else at Kubota has authority to do so. The court credits this testimony.

In addition, the court has difficulty believing that in mid-March in Northern Michigan, shortly after snow was on the ground,[2] Mr. Reblin was preparing the Tractor to mow the lawn. Moreover, according to Mr. Reblin's testimony, Kubota's collection agent telephoned him repeatedly on March 18, 2010, threatening to repossess "that Kubota,"[3] the day after Mr. Reblin's encounter with Mr. Gassman. *See* Tr. at p. 62, lines 11-25. Given Mr. Reblin's ample experience with the repossession process (including numerous on-site visits leading up to bankruptcy), his efforts to prevent entry onto his land by erecting a "gate" and posting a "no trespassing" sign specifically addressed to repossession agents, and the repeated March 18, 2010 telephone threats to repossess "your Kubota," the court finds it implausible that Mr. Reblin would have left the Tractor out in the yard, unguarded, while he ran to the store to get a shear pin.

Furthermore, the court notes that Mr. Reblin admitted in his testimony that he previously transferred the RTV to an undisclosed third party in violation of Kubota's rights under the security agreement. It is just as likely that he did the same thing with respect to the Tractor, since he has failed to provide any evidence, beyond his own inference, that Kubota is in possession of that equipment. Accordingly, the court will deny the motion with respect to Kubota.

---

[2] In his testimony, Mr. Reblin recounted how, about two weeks before the supposed repossession of the Tractor, Kubota had entered his property by driving along a path he shoveled to get to the mailbox. Tr. p. 64, lines 21-25 to p. 65, lines 1-8.
[3] Mr. Reblin's testimony did not establish that Kubota was seeking the Tractor specifically, but instead was seeking to recover "that Kubota" or "your Kubota," a less precise term that may have referred to the RTV (with respect to which the automatic stay had terminated) rather than the Tractor (which remained protected).

### The Debtor's Claims Against GMAC

With respect to GMAC, the Debtor alleges that the creditor entered onto his property in violation of the automatic stay to repossess a certain Chevrolet HHR automobile (the "HHR"). GMAC concedes that the automatic stay was in place and did protect the HHR against repossession but contends that the Debtor did not establish any damages on account of the repossession.

The Debtor's son Ryan, along with his father, testified that GMAC's repossession agent drove past a rope barrier, continued up the driveway to the home, drove over a portion of the lawn under which the Debtor's septic tank was located, and backed up to an adjacent shed where the HHR was parked.  Mr. Reblin contends that in driving over the lawn, GMAC's repossession agent damaged the septic tank, given the unspecified weight of the tow truck.

For his part, the repossession agent, Mr. Reyelts, confirmed that he did drive over the portion of the lawn where the Debtor indicated the septic tank was located.  He also said that in doing so, he drove over tracks formed prior to that time, evidently by other vehicles traveling over this same portion of the lawn.  Indeed, Debtor's Exhibit G9 appears to show wear on the section of lawn the Debtor and his son identified as the location of the subterranean septic tank.  Mr. Reyelts also confirmed that, as an experienced repossession agent in Northern Michigan, he is familiar with septic tanks and takes care to avoid driving over them during the course of his repossession services.

Although GMAC's repossession agent admittedly drove across the lawn, the court finds that the Debtor has not established by a preponderance of the evidence that GMAC caused damage to the septic tank.  The possibility that other repossession agents or other visitors to the Debtor's property contributed or caused septic tank damage is equally likely.  Furthermore, Mr.

Reyelts's testimony was that the tracks already existed when he came to repossess the HHR, as he had been on the property several times before during various attempts to repossess other collateral for other creditors.  As noted above, Exhibit G9 suggests that other vehicles travelled over the septic tank.

In his own testimony, Mr. Reblin admitted that the septic tank may not have been installed in compliance with local regulations.  This shortcoming, too, may account for the supposed damage.  For these reasons, the court finds that Mr. Reblin has failed to establish any actual damages attributable specifically to GMAC's admitted violation of the automatic stay.  By virtue of 11 U.S.C. § 362(k)(2), the Debtor cannot recover punitive damages, or costs and attorney fees.  Accordingly, the court will deny both sanction motions.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor's sanction motions (DN 32 and 33) are DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Wallace Tuttle, Esq., Kurt Steinke, Esq., Ronald Reblin, and James W. Boyd, Chapter 7 Trustee.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: July 29, 2010**